# UNITED STATES DISTRICT COURT
for the
Eastern District of Texas

ZANE BONNETT, an adult, individually by and through his proposed next friends WILLIAM BONNETT and ELIZABETH BONNETT,
*Plaintiff,*

-v-

FRISCO INDEPENDENT SCHOOL DISTRICT and CITY OF FRISCO,
*Defendants.*

Case No.______________________________

**COMPLAINT AND JURY DEMAND**

**CIVIL ACTION**

*This action alleges, inter alia, violations of the Fourth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983, together with violations of Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act, arising from the unlawful seizure, excessive force, disability-based discrimination, and failure to implement required accommodations inflicted upon ZANE BONNETT, then a minor student with documented disabilities, by employees of Frisco Independent School District and a City of Frisco School Resource Officer. These violations occurred during two separate school-related incidents in Frisco, Texas—first, when a CTE teacher pursued, restrained, wrestled, and dragged ZANE BONNETT in a prolonged physical confrontation captured on video; and later, when school personnel and an SRO escalated a predictable disability-related panic episode, culminating in a forcible prone restraint, handcuffing, and arrest of the then minor child. Through these acts and omissions, Defendants infringed upon ZANE BONNETT's constitutional rights, denied him the statutory protections guaranteed by federal disability law, and created a hostile and discriminatory educational environment in which ZANE BONNETT was subjected to repeated, foreseeable, disability-related harm rather than the accommodations and protections required by law.*

Plaintiff ZANE BONNETT, by and through his proposed next friends WILLIAM and ELIZABETH BONNETT ("Parents"), file this Complaint against Defendants FRISCO INDEPENDENT SCHOOL DISTRICT ("Frisco ISD") and the CITY OF FRISCO ("City"), and state as follows:

## INTRODUCTION

1. This civil action arises from two separate but related incidents of unlawful force, disability-based discrimination, and systemic failures by Defendants Frisco Independent School District ("Frisco ISD") and the City of Frisco ("City"). In both incidents, school personnel and a City-employed School Resource Officer ("SRO") ignored known disabilities, disregarded established Section 504 accommodations, escalated predictable disability-related behaviors, and subjected ZANE BONNETT, then a minor student with Autism Spectrum Disorder (Level 1 with a Pathological Demand Avoidance ("PDA") profile), ADHD, anxiety, and related conditions, to unconstitutional and discriminatory treatment.

2. On August 21, 2024, a Frisco ISD Career & Technical Education ("CTE") teacher pursued, seized, restrained, wrestled, and dragged ZANE BONNETT across the floor for approximately seven minutes, conduct captured on video and wholly inconsistent with ZANE BONNETT's disability-related needs, his Section 504 plan, and accepted professional standards. The incident caused physical injury, emotional trauma, and immediate educational disruption.

3. On October 29, 2025, ZANE BONNETT experienced a documented panic episode at Lebanon Trail High School, an event squarely within the scope of his known disabilities and accommodations. Instead of implementing required de-escalation supports, school personnel verbally engaged, confronted, and escalated ZANE BONNETT, culminating in a City of Frisco SRO forcibly restraining, handcuffing, and arresting him. The SRO used a prone restraint with a knee in ZANE BONNETT's back and applied a wrist-twist maneuver that sprained ZANE BONNETT's wrist, causing physical injury, emotional harm, and a criminal charge later determined to be a manifestation of his disability.

4. These incidents were not isolated mistakes. They reflect systemic failures in training, supervision, policy implementation, and disability accommodation by both Defendants. As a direct and proximate result, ZANE BONNETT suffered physical injuries, psychological trauma, educational regression, and long-term emotional harm. His parents suffered independent

emotional distress, financial burdens, and disruption to family stability.

5. These actions contributed to a hostile and discriminatory educational environment in which ZANE BONNETT's disability-related behaviors were met with confrontation, escalation, and police involvement rather than the accommodations required by federal law.

6. Plaintiffs bring this action to vindicate ZANE BONNETT's rights under the United States Constitution, Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, and Texas law, and to hold Defendants accountable for the unlawful conduct, discriminatory practices, and preventable harm inflicted upon a disabled minor child.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs assert claims arising under the laws of the United States, including Section 504 of the Rehabilitation Act (29 U.S.C. § 794), Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.), and 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the United States Constitution.

8. This Court has supplemental jurisdiction over Plaintiffs' related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as the federal claims, arise from the same nucleus of operative facts, and involve overlapping parties, witnesses, and evidence.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants Frisco Independent School District and the City of Frisco reside in this District for venue purposes, and a substantial part of the events or omissions giving rise to the claims occurred in Frisco, Texas, which lies within the Sherman Division of the Eastern District of Texas.

## PARTIES

10. At all times relevant hereto, Plaintiff WILLIAM BONNETT is, upon information

and belief, an adult resident citizen of Collin County, State of Texas, with a residential address believed to be 1210 Granger Drive, Allen, Texas 75013.

11. At all times relevant hereto, Plaintiff ELIZABETH BONNETT is, upon information and belief, an adult resident citizen of Collin County, State of Texas, with a residential address believed to be 1210 Granger Drive, Allen, Texas 75013.

12. At all times relevant hereto, Plaintiff ZANE BONNETT, was then a minor child, is, upon information and belief, an individual residing with his parents, William and Elizabeth Bonnett, in Collin County, Texas, at 1210 Granger Drive, Allen, Texas 75013.

13. At all times relevant hereto, Defendant FRISCO INDEPENDENT SCHOOL DISTRICT ("Frisco ISD") is, upon information and belief, a public school district and political subdivision of the State of Texas, with its principal administrative offices and address for service of process believed to be: Frisco Independent School District, Attn: Superintendent, 5515 Ohio Drive, Frisco, Texas 75035. Frisco ISD is sued for its own acts, omissions, policies, customs, and practices.

14. At all times relevant hereto, Defendant CITY OF FRISCO ("City") is, upon information and belief, a municipal corporation organized under the laws of the State of Texas, with an address for service of process believed to be: City of Frisco – City Attorney's Office, 6101 Frisco Square Boulevard, 5th Floor, Frisco, Texas 75034. The City is sued for the acts and omissions of its employees, including its School Resource Officers, and for its policies, customs, and practices under Monell.

15. The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

## FACTUAL BACKGROUND

17. ZANE BONNETT was then a minor student with multiple documented disabilities, including Autism Spectrum Disorder (Level 1 with PDA profile), Attention-Deficit/Hyperactivity Disorder (ADHD), Anxiety Disorder, Dyslexia, and Dysgraphia. These diagnoses were confirmed by his treating physician, Dr. Theresa Mutzig-Erwin, who has treated ZANE BONNETT since early 2024 and has repeatedly communicated ZANE BONNETT's disability-related needs to Frisco ISD.

18. Dr. Erwin has expressly stated that ZANE BONNETT's panic episodes, elopement behaviors, emotional dysregulation, and verbal outbursts are involuntary manifestations of his disabilities, explaining: "These behaviors are not willful misconduct, but manifestations of the student's disability." ZANE BONNETT's disability profile includes predictable flight/freeze/fight responses when confronted, pressured, or deprived of autonomy, a pattern documented across multiple school years.

19. At all relevant times, ZANE BONNETT had an active Section 504 plan requiring disability-specific supports, including: (a) calm-down spaces; (b) permission to withdraw during escalation;

(c) non-confrontational communication; (d) avoidance of verbal engagement during distress; (e) extended time and structured testing supports; and (f) access to his iPad as an accommodation for dyslexia and dysgraphia. Frisco ISD personnel, including teachers, administrators, and the 504 coordinator, were repeatedly informed of these accommodations.

20. On August 21, 2024, during a distress episode, ZANE BONNETT attempted to leave the classroom to self-regulate, behavior consistent with his disability profile and 504 accommodations. Prior communications from parents had warned administrators that ZANE BONNETT was highly escalated and required disability-appropriate supports.

21. Instead of implementing required de-escalation supports, a Frisco ISD Career Technical Education ("CTE") teacher pursued ZANE BONNETT down a hallway, seized him, wrestled him to the ground, and dragged him across the floor for approximately seven minutes. This prolonged physical confrontation was captured on video. No other staff intervened during the seven-minute assault.

22. No accommodations were implemented, no calm-down space was offered, and no disability-appropriate intervention was attempted. The teacher's actions constituted physical restraint and use of force against a disabled minor. The teacher later resigned, and Frisco ISD failed to produce investigation documents in response to FERPA.

23. As a result, ZANE BONNETT suffered physical pain, bruising, musculoskeletal strain, acute emotional distress, and fear, and his educational access was immediately disrupted. Parents were not promptly notified of the nature or extent of the physical engagement.

24. Following the incident, Frisco ISD personnel attempted to question ZANE BONNETT without parental consent, despite explicit parental instructions prohibiting any questioning outside their presence. On August 23, the assistant principal was directed by district personnel to remove ZANE BONNETT from class and obtain a written statement from him in the absence of his parents. The assistant principal, recognizing the impropriety of the directive, notified the parents instead and did not proceed with the questioning. This attempted procurement of a written statement, issued in direct contravention of parental instructions and disability-related safeguards, violated procedural protections and contributed to additional emotional harm.

25. On October 29, 2025, ZANE BONNETT experienced a documented panic episode while attempting to retake a pre-calculus test—an event squarely within the scope of his known disabilities and accommodations. Witness statements confirm that staff were aware ZANE BONNETT was escalated.

26. School personnel failed to implement his Section 504 accommodations, including the requirement not to speak to him during escalation, the requirement to provide a calm-down space, and the requirement to avoid confrontational communication. Staff also failed to identify ZANE BONNETT despite notifications through email, walkie-talkie, and teacher reports. Associate Principal Montague heard over the walkie-talkie that an upset, crying student was in the stairwell and, instead of implementing ZANE BONNETT's required accommodations or verifying the student's identity, he invited the SRO to accompany him to the location. Inviting law enforcement into a disability-related escalation, contrary to ZANE BONNETT's 504 plan and known disability profile, constituted a violation of his accommodations and foreseeably increased the risk of confrontation and harm.

27. Body-camera footage further shows that when ZANE BONNETT quietly mumbled the dysregulated statement, the SRO, standing several feet behind Associate Principal Montague, did not appear to hear it and did not react. Instead, Montague turned toward the SRO and looked at him, prompting the SRO to approach ZANE BONNETT This sequence contradicts the SRO's arrest report, which incorrectly states that the alleged threat was directed at ZANE BONNETT's Pre-Calculus teacher, and further demonstrates that the escalation was driven by staff conduct rather than any perceived threat from ZANE BONNETT

28. Attempting to self-regulate, ZANE BONNETT withdrew to a quiet area, consistent with his disability profile and 504 plan. He remained alone for approximately 45 minutes attempting to calm himself.

29. Despite multiple notifications through email, walkie-talkie, and teacher reports, Frisco ISD personnel failed to identify or locate ZANE BONNETT for approximately forty-five minutes, during which he remained alone attempting to calm himself. This failure to identify a known disabled student in distress constituted a significant breakdown in required disability-related supervision and directly contributed to the escalation that followed.

30. A City of Frisco School Resource Officer ("SRO") approached without identifying himself, touched ZANE BONNETT's shoulder, and verbally engaged him including identified himself—actions known to escalate disability-related panic responses. Witness statements and video confirm that the SRO did not initially identify himself. Body-camera footage shows that the SRO only identified himself after ZANE BONNETT mumbled the alleged threat, meaning the identification occurred after physical contact and verbal engagement had already escalated the situation.

31. The SRO then forcibly pulled ZANE BONNETT down approximately four steps, placed a knee in ZANE BONNETT's back, and handcuffed him in a prone restraint position—a dangerous technique particularly inappropriate for a panicking autistic minor. Body-camera footage further shows the SRO bending ZANE BONNETT's wrist backward to a degree beyond normal range of motion, causing a sprain, as evidenced by ZANE BONNETT's visible pain response and the SRO's subsequent not cleaning the injury on camera but rather the nurse was called to tend to ZANE BONNETT. Throughout the restraint, ZANE BONNETT repeatedly stated, "I just didn't want to talk," reflecting a disability-related panic response rather than aggression. Although the SRO can be heard saying "stop fighting me," video evidence shows ZANE BONNETT's movements were reflexive attempts to pull away from the officer's grasp rather than any intentional lunge or push. Campus video and body-camera footage contradict the SRO's narrative and confirm that ZANE BONNETT posed no threat warranting the level of force used.

32. As a result of the restraint and arrest, ZANE BONNETT suffered a sprained wrist, abrasions, physical pain, heightened anxiety, and severe emotional trauma, and was transported to municipal jail, where he remained overnight. Parents were not notified until after the restraint and arrest.

33. ZANE BONNETT was charged with terroristic threat and resisting arrest, despite

the subsequent Manifestation Determination Review ("MDR") finding that the behavior was a direct manifestation of his disability. The 504 plan and investigative documents incorrectly listed the date of arrest and the incident date, and MDR audio recordings show disagreement about whether accommodations were followed.

34. The MDR committee concluded: "The behavior WAS a manifestation of the student's disability." This determination confirms that the arrest and charges arose from disability-related conduct and that Frisco ISD failed to implement required accommodations.

35. Frisco ISD repeatedly failed to implement ZANE BONNETT's accommodations, including but not limited to:

a. Denying his iPad accommodation, despite its inclusion in his 504 plan;

b. Failing to provide required notes, materials, and structured supports, including illegible notes and missing Canvas resources;

c. Verbally engaging ZANE BONNETT during escalation, contrary to his 504 plan;

d. Failing on October 29 to retake the test on paper per accommodations, confirmed by the learning lab teacher witness statement, further building escalation of ZANE BONNETT;

e. Failing to identify ZANE BONNETT during the October 29 incident, resulting in no accommodations being implemented; despite the campus head of disability services being present throughout the stairwell confrontation and arrest and taking no steps to identify ZANE BONNETT or to implement any of his required Section 504 accommodations;

f. Failing to document physical restraints, including a restraint used by the principal on September 11, 2025;

g. Repeatedly escalating minor disability-related behaviors into disciplinary

referrals, including ISS and OSS.

36. Frisco ISD's FERPA production was incomplete, with missing emails, missing ISS referrals, missing investigation documents, and an admission that search tools were "limited," raising concerns of spoliation and inadequate recordkeeping.

37. The SRO involved in the October 29 incident had been on the job approximately three weeks and lacked training on autism, disability accommodations, de-escalation techniques, crisis intervention, or restraint protocols for disabled students. The City failed to provide adequate training for SROs assigned to schools.

38. The SRO used excessive force inconsistent with ZANE BONNETT's disability needs, contrary to accepted police practices, and in violation of ZANE BONNETT's constitutional rights under the Fourth and

Fourteenth Amendments. The City's failure to train and supervise its SROs was a moving force behind the constitutional violations.

39. As a direct and proximate result of Defendants' acts and omissions described above, including the failure to implement required disability accommodations, the escalation of predictable disability-related behaviors, the unlawful use of physical force, the unconstitutional seizure and arrest of a disabled minor, and the systemic failures in training, supervision, and policy implementation, ZANE BONNETT suffered physical injuries, emotional trauma, psychological regression, educational disruption, and loss of access to federally protected disability-related supports. In addition, his parents suffered independent emotional distress, disruption to family stability, financial burdens associated with medical care, counseling, and educational advocacy, and loss of work opportunities, all of which were foreseeable consequences of Defendants' conduct.

## CAUSES OF ACTION

**COUNT I**
**SECTION 504 OF THE REHABILITATION ACT**
***(Against Defendant Frisco ISD)***

40. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

41. ZANE BONNETT is a qualified individual with disabilities within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, including Autism Spectrum Disorder, ADHD, Anxiety Disorder, Dyslexia, and Dysgraphia. His disabilities substantially limit major life activities including learning, concentrating, regulating emotions, and communicating during distress.

42. Upon information and belief, Frisco ISD is a recipient of federal financial assistance and is therefore subject to the requirements and prohibitions of Section 504.

43. At all relevant times, ZANE BONNETT had an active Section 504 plan requiring disability-specific accommodations, including calm-down spaces, permission to withdraw during escalation, non-confrontational communication, avoidance of verbal engagement during distress, structured testing supports, and access to his iPad for dyslexia and dysgraphia.

44. Frisco ISD repeatedly failed to implement ZANE BONNETT's Section 504 accommodations, including but not limited to: denying his iPad accommodation; failing to provide required notes and materials; verbally engaging him during escalation; failing to identify him during disability-related distress; failing to provide calm-down spaces; failing to document physical restraints; inviting a School Resource Officer into a disability-related escalation contrary to his 504 plan; and failing to intervene despite the campus head of disability services being present during the October 29 incident.

45. On August 21, 2024, Frisco ISD personnel escalated a disability-related distress episode by pursuing, seizing, wrestling, and dragging ZANE BONNETT for approximately seven minutes, instead of implementing required accommodations. No de-escalation supports were used.

46. On October 29, 2025, Frisco ISD personnel again failed to implement ZANE

BONNETT's accommodations during a documented panic episode, verbally engaged him, denied him a calm-down space, and escalated the situation, resulting in a dangerous physical restraint and arrest by a City of Frisco SRO.

47. These failures denied ZANE BONNETT meaningful access to educational services, caused him to be removed from class, subjected him to physical and emotional harm, and deprived him of the benefits of his educational program.

48. Frisco ISD acted with deliberate indifference to ZANE BONNETT's known disability-related needs. Despite actual knowledge of his disabilities, accommodations, and predictable escalation patterns, Frisco ISD consciously disregarded a substantial risk of harm by failing to implement his 504 plan, failing to train staff, failing to intervene during improper restraints, failing to take corrective action after repeated incidents, inviting law enforcement into a disability-related escalation, and ignoring disability-related behaviors even when no threat was perceived by staff or the SRO.

49. Frisco ISD had actual knowledge of ZANE BONNETT's disabilities, predictable escalation patterns, and required accommodations through medical documentation, parent communications, teacher reports, and multiple prior incidents in which ZANE BONNETT's disability-related behaviors escalated when accommodations were not implemented. Despite this knowledge, Frisco ISD failed to take corrective action, retrain personnel, or ensure implementation of accommodations, demonstrating deliberate indifference to ZANE BONNETT's federally protected rights.

50. As a direct and proximate result of Frisco ISD's violations of Section 504, ZANE BONNETT suffered physical injuries, emotional trauma, psychological regression, educational disruption, and loss of access to federally protected disability-related supports. His parents suffered independent emotional distress, financial burdens, and disruption to family stability.

**COUNT II**
**TITLE II OF THE ADA**
***(Against Frisco ISD and City of Frisco)***

51. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

52. ZANE BONNETT is a qualified individual with disabilities within the meaning of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2), including Autism Spectrum Disorder, ADHD, Anxiety Disorder, Dyslexia, and Dysgraphia. These disabilities substantially limit major life activities including learning, concentrating, regulating emotions, and communicating during distress.

53. Frisco Independent School District ("Frisco ISD") and the City of Frisco ("City") are public entities within the meaning of 42 U.S.C. § 12131(1) and are therefore subject to the requirements and prohibitions of Title II of the ADA.

54. At all relevant times, ZANE BONNETT had an active Section 504 plan and disability-related accommodations that were required to ensure his equal access to educational programs, services, and activities. These accommodations were known to Frisco ISD personnel and were required to be implemented during all school-related interactions, including disciplinary and safety interventions.

55. Frisco ISD repeatedly failed to implement ZANE BONNETT's disability accommodations, including failing to provide calm-down spaces, failing to allow withdrawal during escalation, verbally engaging him during distress, denying his iPad accommodation, failing to provide required instructional materials, failing to identify him during disability-related episodes, and failing to document physical restraints; inviting a School Resource Officer into a disability-related escalation contrary to his accommodations; and failing to intervene despite the campus head of disability services being present during the October 29 incident. These failures

denied ZANE BONNETT meaningful access to educational services and subjected him to discriminatory treatment.

56. On August 21, 2024, Frisco ISD personnel escalated a disability-related distress episode by pursuing, seizing, wrestling, and dragging ZANE BONNETT for approximately seven minutes instead of implementing required accommodations. This conduct constituted discrimination and denial of meaningful access to education by reason of disability.

57. On October 29, 2025, Frisco ISD personnel again failed to implement ZANE BONNETT's accommodations during a documented panic episode, verbally engaged him, denied him a calm-down space, and escalated the situation. These failures directly contributed to the subsequent use of force and arrest by the City's School Resource Officer. Body-camera footage further captures the Associate Principal threatening ZANE BONNETT by stating, "If you don't move into a classroom, I will make you move," a confrontational directive that directly violated ZANE BONNETT's Section 504 accommodations and predictably intensified his disability-related panic response.

58. The City of Frisco, acting through its School Resource Officer ("SRO"), discriminated against ZANE BONNETT by reason of disability by failing to identify him, failing to use disability-appropriate de-escalation techniques, and instead using dangerous physical force, including pulling him down stairs, placing a knee in his back, and handcuffing him in a prone restraint position. The SRO's actions denied ZANE BONNETT equal access to school safety services and subjected him to unlawful seizure and arrest arising from disability-related conduct.

59. The City of Frisco failed to train its SROs on autism, disability accommodations, crisis intervention, and de-escalation techniques for disabled students. The SRO involved in the October 29 incident had been on the job for approximately three weeks and lacked essential training. This failure to train constitutes a policy, practice, or custom that foreseeably resulted in discrimination against disabled students, including ZANE BONNETT

60. Defendants acted with deliberate indifference to ZANE BONNETT's known disability-related needs. Despite actual knowledge of his disabilities, accommodations, and predictable escalation patterns, Defendants consciously disregarded a substantial risk of harm by failing to implement accommodations, failing to train staff and SROs, failing to intervene during improper restraints, failing to take corrective action after repeated incidents, inviting law enforcement into a disability-related escalation, and escalating the October 29 incident even though the SRO did not perceive any threat and did not react to ZANE BONNETT's quiet dysregulated utterance.

61. The City's failure to train SROs on disability-related interactions was longstanding, obvious, and repeatedly identified by Frisco ISD personnel and parents as a substantial risk to disabled students. The October 29 incident was a highly predictable consequence of assigning an untrained officer to a school campus without providing essential training on autism, crisis intervention, or safe restraint practices. This failure to train was the moving force behind the discrimination and harm suffered by ZANE BONNETT

62. As a direct and proximate result of Defendants' violations of Title II of the ADA, ZANE BONNETT suffered physical injuries, emotional trauma, psychological regression, educational disruption, and loss of access to federally protected disability-related supports. His parents suffered independent emotional distress, financial burdens, and disruption to family stability.

**COUNT III**
**<u>42 U.S.C. § 1983 – FOURTH AMENDMENT</u>**
***(Against City of Frisco)***

63. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

64. This Count is brought pursuant to 42 U.S.C. § 1983 to redress violations of the

Fourth Amendment to the United States Constitution, which guarantees the right to be free from unreasonable seizures and excessive force.

65. On October 29, 2025, the City of Frisco, acting through its School Resource Officer ("SRO"), seized ZANE BONNETT within the meaning of the Fourth Amendment by physically restraining him, pulling him down a flight of stairs, placing a knee in his back, handcuffing him, and arresting him. This seizure was intentional, non-consensual, and conducted under color of state law.

66. The SRO's use of force, including pulling a disabled minor down stairs, forcing him into a prone restraint, placing a knee in his back, and handcuffing him during a panic episode, constituted excessive force. The force used was objectively unreasonable under clearly established law, particularly given ZANE BONNETT's age, size, disability profile, lack of threat, and the absence of any violent conduct. Body-camera footage, obtained months after the incident and not available to the family or school personnel at the time, captures ZANE BONNETT quietly stating, "I just want to kill you guys," a dysregulated utterance made only after prolonged verbal pressure by the SRO and Associate Principal to talk and move into a classroom. This statement, made during a disability-related panic

episode and after the escalation had already occurred, did not justify the level of force used and does not alter the fact that ZANE BONNETT posed no immediate threat warranting a prone restraint, knee-pressure, or forcible stairwell removal.

67. Upon information and belief, video evidence and witness statements contradict the SRO's narrative and confirm that ZANE BONNETT did not lunge at, strike, or push the officer, and posed no immediate threat to the safety of the officer or others. At the end of the stairwell confrontation,

ZANE BONNETT stood up and turned away from the SRO and Associate Principal, consistent with his disability-related need to withdraw and find a quiet space, and not with any intent to flee

or resist; body-camera footage shows that ZANE BONNETT did not understand he was being arrested at that moment. The SRO escalated a disability-related panic episode into a physical confrontation, despite the availability of safe, disability-appropriate alternatives.

68. Body-camera footage further shows the Associate Principal listening to ongoing radio communications about the incident through his earpiece and attempting to show the SRO text messages on his phone during the encounter, suggesting that staff may have already known the student's identity and nevertheless failed to implement his Section 504 accommodations or intervene to prevent escalation.

69. The SRO failed to identify himself, failed to use de-escalation techniques, failed to recognize or respond appropriately to ZANE BONNETT's known disabilities, and instead used force that was disproportionate, dangerous, and unnecessary. The prone restraint used on ZANE BONNETT is widely recognized as medically dangerous, especially for individuals experiencing panic, anxiety, or autism-related dysregulation.

70. The City of Frisco is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because the constitutional violations were caused by the City's policies, customs, and failures to train. The SRO involved had been on the job approximately three weeks, had no training in autism, disability accommodations, crisis intervention, or de-escalation techniques for disabled students, and was not trained on safe restraint practices for minors.

71. The City maintained a policy, custom, or practice of assigning untrained officers to schools, failing to train SROs on interacting with disabled students, failing to train officers on crisis intervention, and failing to supervise or monitor SRO conduct in school settings. These failures were the moving force behind the excessive force and unreasonable seizure inflicted upon ZANE BONNETT

72. Upon information and belief, relevant communications among Frisco ISD administrators regarding ZANE BONNETT's disability-related behaviors, accommodations, and

prior incidents were exchanged through personal cell phones and district-issued radio/walkie talkies during September and October 2025. Body-camera footage shows Associate Principal Montague listening to radio communications and attempting to show text messages to the SRO during the October 29 incident. These circumstances suggest that contemporaneous cellphone records are likely to contain information bearing on staff knowledge of ZANE BONNETT's identity, disability profile, and accommodations, and may further demonstrate systemic failures in communication, supervision, and disability-related intervention protocols.

73. The City acted with deliberate indifference to the known and obvious consequences of failing to train SROs on disability-related interactions. The risk that an untrained officer would escalate a disability-related episode into a dangerous physical confrontation was highly predictable and plainly foreseeable.

74. As a direct and proximate result of the City's unconstitutional conduct, ZANE BONNETT suffered physical injuries, emotional trauma, psychological regression, and long-term harm. He was unlawfully arrested, transported to jail, and detained overnight. His parents suffered independent emotional distress, financial burdens, and disruption to family stability.

75. Plaintiffs seek compensatory damages, punitive damages against the individual officer (if added), attorneys' fees under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

**COUNT IV**
**42 U.S.C. § 1983 – FOURTEENTH AMENDMENT**
***(Against Frisco ISD)***

76. Plaintiff hereby repeats all of the allegations and exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

77. This Count is brought pursuant to 42 U.S.C. § 1983 to redress violations of the Fourteenth Amendment to the United States Constitution, including the rights to bodily integrity, substantive due process, and freedom from arbitrary government action.

78. ZANE BONNETT possesses a protected liberty interest in bodily integrity, personal security, and access to education free from arbitrary, abusive, and dangerous conduct by state actors. These interests are secured by the Fourteenth Amendment.

79. At all relevant times, Frisco ISD personnel, including teachers, administrators, and staff, acted under color of state law when interacting with, restraining, disciplining, and supervising ZANE BONNETT

80. On August 21, 2024, Frisco ISD personnel pursued, seized, wrestled, and dragged ZANE BONNETT for approximately seven minutes during a disability-related distress episode. This prolonged physical assault on a disabled minor was arbitrary, excessive, and conscience-shocking, and constituted a deprivation of ZANE BONNETT's Fourteenth Amendment right to bodily integrity. The two SRO's were not even on campus that day.

81. On September 11, 2025, Frisco ISD's principal physically restrained ZANE BONNETT by grabbing his arm, failed to document the restraint, and failed to implement required accommodations as well as wrongly utilized detention. This restraint and detention were improper, dangerous, and violated ZANE BONNETT's substantive due process rights, as well as escalated him for the October 29, 2026 event.

82. On October 29, 2025, Frisco ISD personnel again escalated a predictable disability-related panic episode, verbally confronted ZANE BONNETT, denied him a calm-down space, failed to identify him, and failed to implement his Section 504 accommodations. These actions foreseeably resulted in a dangerous physical confrontation and arrest by the City's SRO.

83. Frisco ISD's repeated failures to implement accommodations, including denying ZANE BONNETT's iPad, failing to provide notes and materials, verbally engaging him during escalation, failing to document restraints, and failing to identify him during distress, constitute deliberate indifference to ZANE BONNETT's known disability-related needs. Over twenty

examples exist of ignoring ZANE BONNETT's needed accommodations and/or unnecessarily escalating disciplinary penalties, and thus constitute deliberate indifference of a wide pattern of a constitutional violation. The chronology of such events is attached hereto as Exhibit A, and is further reinforced by the multiple families who complain at ARD meetings of problems with meeting accommodations and escalation against their children. On September 30, 2022, ZANE BONNETT had an outburst in English after lack of resources in biology, which led to an elopement and wrongful ISS for rest of the day. On October 4, 2022 there being no emergency ARD available, the school suggested immediate amendments to accommodations thus forcing a lack of due process. On September 12, 2023, the geometry teacher's notes are illegible and ZANE BONNETT is reported shutting down and with high anxiety, which continues through October and on November 7, 2023 ZANE BONNETT elopes from French after an argument over a rubric and went to his mother's classroom, she being a teacher at the same high school. The French teacher followed ZANE BONNETT down the hallway and continues the shouting match with ZANE BONNETT in her classroom. ZANE BONNETT receives ISS on November 8, 2023 for this after school incident with the French teacher. Such events show lack of any consistency except for wrongful interaction with ZANE BONNETT by teachers that ignore his disability-related status.

84. Frisco ISD had actual knowledge of ZANE BONNETT's disabilities, predictable escalation
patterns, and required accommodations through medical documentation, parent communications, teacher reports, 504 meetings and firing of Mr. Clayton after his dragging ZANE BONNETT down the hallway for seven minutes caught on school video. Despite this knowledge, Frisco ISD consciously disregarded a substantial risk of harm to ZANE BONNETT

85. Frisco ISD's conduct was not merely negligent; it was arbitrary, egregious, and conscience-shocking, particularly given ZANE BONNETT's age, disability profile, vulnerability, and the foreseeability of harm when accommodations were ignored.

86. Frisco ISD is liable under § 1983 because the constitutional violations were caused by the District's policies, customs, and failures to train, including:

a. A custom of failing to implement Section 504 accommodations;

b. A custom of escalating disability-related behaviors into disciplinary or physical interventions;

c. A custom of failing to document restraints;

d. A failure to train teachers and administrators on autism, de-escalation, crisis intervention, and disability-related supports;

e. A failure to supervise personnel who repeatedly violated ZANE BONNETT's rights.

87. These policies, customs, and failures to train were the moving force behind the constitutional violations suffered by ZANE BONNETT, including those described above, more fully set forth in Exhibit A among additional incidents and the October 29, 2025 escalation leading to his arrest.

88. As a direct and proximate result of Frisco ISD's Fourteenth Amendment violations, ZANE BONNETT suffered physical injuries, emotional trauma, psychological regression, educational disruption, and long-term harm. His parents suffered independent emotional distress, financial burdens, and disruption to family stability.

89. Plaintiffs seek compensatory damages, punitive damages against individual actors (if added), attorneys' fees under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

**COUNT V**
**<u>42 U.S.C. § 1983 – MONELL LIABILITY</u>**
***(Against City of Frisco)***

90. Plaintiffs hereby repeat all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

91. In addition to paragraphs 83 to 87, this Count is brought pursuant to 42 U.S.C. § 1983 to redress violations of the Fourth and Fourteenth Amendments caused by the City of Frisco's policies, customs, practices, and failures to train, supervise, and discipline its School Resource Officers ("SROs").

92. The City of Frisco is a municipal entity and is therefore subject to suit under Monell v. Department of Social Services, 436 U.S. 658 (1978). The City is responsible for the training, supervision, assignment, and conduct of SROs placed in Frisco ISD schools.

93. On October 29, 2025, the City's SRO seized ZANE BONNETT within the meaning of the Fourth Amendment by pulling him down a flight of stairs, forcing him into a prone restraint, placing a knee in his back, handcuffing him, and arresting him. This seizure was unreasonable and constituted excessive force.

94. The SRO's conduct also violated ZANE BONNETT's Fourteenth Amendment rights to bodily integrity, personal security, and freedom from arbitrary and conscience-shocking conduct by state actors.

95. The SRO involved in the incident had been on the job approximately three weeks, had no training in autism, disability accommodations, crisis intervention, de-escalation techniques, or safe restraint practices for minors, and lacked training on interacting with students experiencing panic episodes or disability-related dysregulation.

96. The City of Frisco maintained policies, customs, and practices that foreseeably resulted in constitutional violations, including:

a. Assigning untrained officers to schools, including officers with no experience or training in disability-related crisis intervention;

b. Failing to train SROs on autism, disability accommodations, de-escalation, crisis intervention, and safe restraint techniques;

c. Failing to supervise SROs assigned to school campuses;

d. Failing to implement policies requiring identification of disabled students before engaging in physical intervention; paragraphs 83 to 87 specifically set out the multiple incidents with ZANE BONNETT that were escalated to infractions or ISS knowledge of which should put an SRO on notice of the need for particular de-escalation and the lack of violence from ZANE BONNETT

e. Failing to require documentation or review of restraints, uses of force, or disability-related incidents involving SROs;

f. Permitting SROs to escalate disability-related behaviors into physical confrontations and arrests;

g. Failing to provide corrective action after prior incidents involving improper restraint of disabled students;

h. and failing to establish protocols preventing administrators from inviting law enforcement into disability-related escalations or engaging in contemporaneous text and radio communications that contributed to escalation rather than accommodation; as the cell phone exchange between AP Montague and the SRO exhibited on October 29, 2025.

97. These policies, customs, and failures to train constitute deliberate indifference to the constitutional rights of disabled students, including ZANE BONNETT The City knew or should have known that assigning untrained officers to school campuses created a substantial risk of constitutional injury, particularly where administrators and disability-services personnel failed to intervene, failed to implement accommodations, and escalated the October 29 incident even though the SRO did not perceive any threat and did not react to ZANE BONNETT's quiet dysregulated utterance.

98. The constitutional violations suffered by ZANE BONNETT were the direct result of the City's deliberate indifference. The SRO's lack of training, lack of supervision, and improper

use of force were highly predictable consequences of the City's failure to train and supervise officers assigned to schools.

99. The City's policies, customs, and failures to train were the moving force behind the excessive force, unreasonable seizure, and deprivation of bodily integrity inflicted upon ZANE BONNETT

100. The City had notice of prior disability-related incidents involving SROs in Frisco ISD schools, including improper restraint, escalation of disability-related behaviors, and failures to identify disabled students before engaging in physical intervention. Despite this notice, the City failed to implement corrective measures, revise training protocols, or supervise SRO conduct. This pattern of inadequate training and supervision constitutes deliberate indifference and was a direct cause of the constitutional violations inflicted upon ZANE BONNETT

101. As a direct and proximate result of the City's unconstitutional policies and practices, ZANE BONNETT suffered physical injuries, emotional trauma, psychological regression, educational disruption, and long-term harm. His parents suffered independent emotional distress, financial burdens, and disruption to family stability.

102. Plaintiffs seek compensatory damages, punitive damages against individual officers (if added), attorneys' fees under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

**COUNT VI**
**<u>NEGLIGENCE (TTCA WAIVER: USE OF FORCE)</u>**
***(Against Frisco ISD and City of Frisco)***

103. Plaintiffs hereby repeat all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

104. Frisco Independent School District ("Frisco ISD") and the City of Frisco ("City") are governmental units within the meaning of the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code § 101.001(3).

105. Under Tex. Civ. Prac. & Rem. Code § 101.021(2), governmental immunity is waived for personal injuries caused by the use of tangible personal property or the use or misuse of force by employees acting within the scope of their employment.

106. On August 21, 2024, a Frisco ISD CTE teacher, acting within the scope of employment, used force against ZANE BONNETT by pursuing him, seizing him, wrestling him to the ground, and dragging him across the floor for approximately seven minutes. This prolonged physical restraint constituted a use of force under the TTCA.

107. The teacher's conduct was negligent, including: failing to implement disability-related accommodations; failing to use de-escalation techniques; failing to recognize predictable disability-related behaviors; escalating a distress episode into a physical confrontation; and failing to summon trained personnel. These negligent acts and omissions caused foreseeable physical and emotional injury to ZANE BONNETT

108. On September 11, 2025, Frisco ISD's principal, acting within the scope of employment, physically restrained ZANE BONNETT by grabbing his arm, failed to document the restraint, and failed to implement accommodations. This restraint constituted a use of force under the TTCA and was performed negligently.

109. On October 29, 2025, the City of Frisco's School Resource Officer ("SRO"), acting within the scope of employment, used force against ZANE BONNETT by pulling him down a flight of stairs, placing a knee in his back, forcing him into a prone restraint, and handcuffing him. The SRO also used tangible personal property, handcuffs, during the restraint and arrest which caused injury including a sprained wrist.

110. The SRO's conduct was negligent, including: failing to identify himself; failing to use de-escalation techniques; failing to recognize disability-related distress; failing to follow safe restraint practices; escalating a predictable panic episode into a dangerous physical confrontation, and failing to recognize that ZANE BONNETT's movements were reflexive disability-related

responses rather than intentional resistance. These negligent acts and omissions caused foreseeable injury to ZANE BONNETT

111. The TTCA's waiver applies because ZANE BONNETT's injuries were caused by the use of force and the use of tangible personal property (handcuffs) by employees acting within the scope of their employment. Plaintiffs do not allege intentional torts against Frisco ISD or the City; rather, Plaintiffs allege negligence in the use of force and failure to implement required safety and disability-related procedures.

112. Frisco ISD and the City owed ZANE BONNETT a duty to exercise reasonable care in supervising, restraining, and interacting with him, particularly given his known disabilities and accommodations. Both entities breached that duty through negligent training, negligent supervision, negligent failure to implement accommodations, and negligent use of force.

113. As a direct and proximate result of Defendants' negligence, ZANE BONNETT suffered physical injuries, emotional trauma, psychological regression, educational disruption, and long-term harm. His parents suffered independent emotional distress, financial burdens, and disruption to family stability.

114. Plaintiffs seek all damages recoverable under the TTCA, including medical expenses, mental-health treatment costs, physical pain, emotional suffering, and all other relief the Court deems just and proper.

**COUNT VII**
**NEGLIGENT SUPERVISION / TRAINING**
***(Against Frisco ISD and City of Frisco)***

115. Plaintiffs hereby repeat all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

116. Frisco Independent School District ("Frisco ISD") and the City of Frisco ("City") owed ZANE BONNETT a duty to exercise reasonable care in hiring, training, supervising, and retaining employees responsible for interacting with students, including teachers, administrators,

and School Resource Officers ("SROs").

117. Frisco ISD breached this duty by failing to train teachers, administrators, and campus personnel on autism, disability-related accommodations, crisis intervention, de-escalation techniques, safe restraint practices, and the implementation of Section 504 plans. Frisco ISD further failed to supervise personnel who repeatedly violated ZANE BONNETT's accommodations, escalated disability-related behaviors, used improper physical restraint, and failed to train administrators on disability-appropriate responses, including prohibitions on inviting law enforcement into disability-related escalations.

118. Frisco ISD knew or should have known that its employees, including the CTE teacher who assaulted ZANE BONNETT on August 21, 2024, and the principal who restrained him on September 11, 2025, lacked adequate training and had previously engaged in improper or unsafe conduct. Despite this knowledge, Frisco ISD failed to intervene, retrain, discipline, or supervise these employees. As well it failed to retrain, discipline or supervise the employees described in paragraph 83, as well as Exhibit A.

119. The City of Frisco breached its duty by failing to train its SROs on autism, disability accommodations, crisis intervention, de-escalation techniques, safe restraint practices, and proper identification of disabled students. The SRO involved in the October 29, 2025, incident had been on the job approximately three weeks and lacked essential training required for safe interactions with disabled minors.

120. The City further failed to supervise or monitor SRO conduct in school settings, failed to require documentation or review of restraints or uses of force, and failed to implement corrective measures after prior incidents involving improper restraint of disabled students.

121. The negligent supervision and negligent training by both Frisco ISD and the City created a foreseeable risk that untrained or inadequately supervised employees would escalate disability-related behaviors into dangerous physical confrontations, use improper restraint

techniques, fail to implement accommodations, and cause physical and emotional harm to ZANE BONNETT

122. The negligence of Frisco ISD and the City was a direct and proximate cause of the injuries suffered by ZANE BONNETT, including the August 21 assault, the September 11 restraint, and the October 29 excessive-force incident and arrest. These harms were the predictable result of Defendants' failure to train and supervise employees responsible for interacting with disabled students.

123. As a direct and proximate result of Defendants' negligent supervision and negligent training, ZANE BONNETT suffered physical injuries, emotional trauma, psychological regression, educational disruption, and long-term harm. His parents suffered independent emotional distress, financial burdens, and disruption to family stability.

124. Plaintiffs seek all damages recoverable under Texas law, including medical expenses, mental-health treatment costs, physical pain, emotional suffering, and all other relief the Court deems just and proper.

**COUNT VIII**
**NEGLIGENT FAILURE TO ACCOMMODATE**
***(Against Frisco ISD)***

125. Plaintiffs hereby repeat all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

126. Frisco Independent School District ("Frisco ISD") owed ZANE BONNETT a duty to exercise reasonable care in supervising, protecting, and accommodating him as a disabled student with known medical, behavioral, and emotional needs. This duty arose from ZANE BONNETT's Section 504 plan, medical documentation, parent communications, and Frisco ISD's own policies governing student safety and disability accommodations.

127. Frisco ISD breached this duty by failing to implement ZANE BONNETT's accommodations; failing to provide calm-down spaces; verbally engaging him during escalation;

denying his iPad accommodation; failing to provide required instructional materials; failing to identify him during disability-related distress; failing to document restraints; escalating predictable disability-related behaviors into dangerous physical confrontations, and failing to prevent administrators from inviting law enforcement into disability-related escalations contrary to his Section 504 plan.

128. Frisco ISD further breached its duty by failing to protect ZANE BONNETT from foreseeable harm, including the August 21, 2024, assault by a CTE teacher, the September 11, 2025, improper restraint by the principal, and the October 29, 2025, escalation that resulted in a dangerous physical restraint and arrest.

129. These breaches were negligent, not intentional, and fall within the scope of conduct for which Frisco ISD may be held liable under Texas law, including under the Texas Tort Claims Act when negligence results in the use of force or the misuse of tangible personal property.

130. It was foreseeable that failing to implement accommodations, failing to train staff, and failing to protect a disabled minor during distress episodes would result in physical injury, emotional trauma, psychological regression, and educational disruption.

131. Frisco ISD's negligent acts and omissions were a direct and proximate cause of ZANE BONNETT's injuries, including physical pain, emotional trauma, heightened anxiety, loss of educational access, and long-term psychological harm. His parents suffered independent emotional distress, financial burdens, and disruption to family stability.

132. Plaintiffs seek all damages recoverable under Texas law, including medical expenses, mental-health treatment costs, physical pain, emotional suffering, and all other relief the Court deems just and proper.

**COUNT IX**
**ASSAULT AND BATTERY**
***(Against Frisco ISD and City of Frisco)***

133. Plaintiffs hereby repeat all of the allegations and Exhibits contained in the

Complaint thus far above and incorporate the same as if fully set forth at length herein.

134. On August 21, 2024, a Frisco ISD CTE teacher, acting within the scope of employment, intentionally and offensively touched ZANE BONNETT by pursuing him, seizing him, wrestling him to the ground, and dragging him across the floor for approximately seven minutes. This conduct constituted assault and battery under Texas law.

135. On September 11, 2025, Frisco ISD's principal, acting within the scope of employment, intentionally grabbed and physically restrained ZANE BONNETT, constituting assault and battery.

136. On October 29, 2025, the City of Frisco's School Resource Officer (SRO"), acting within the scope of employment, intentionally used force against ZANE BONNETT by pulling him down a flight of stairs, placing a knee in his back, forcing him into a prone restraint, and handcuffing him. This conduct constituted assault and battery.

137. The above uses of force were offensive, harmful, and non-consensual, and were not justified under Texas law. ZANE BONNETT posed no threat, did not engage in violent conduct, was experiencing disability-related distress, and ZANE BONNETT's movements during the October 29 incident were reflexive disability-related responses rather than intentional resistance.

138. Under Tex. Civ. Prac. & Rem. Code § 101.021(2), Frisco ISD and the City of Frisco are liable for personal injuries caused by the use of force by employees acting within the scope of their employment. Plaintiffs do not allege intentional torts by the governmental units themselves; rather, Plaintiffs allege that the governmental units are liable for their employees' use of force under § 101.021(2).

139. The assault and battery committed by Frisco ISD and City employees were a direct and proximate cause of ZANE BONNETT's physical injuries, emotional trauma, psychological regression, and long-term harm. His parents suffered independent emotional distress, financial burdens, and disruption to family stability.

140. Plaintiffs seek all damages recoverable under Texas law, including medical expenses, mental-health treatment costs, physical pain, emotional suffering, and all other relief the Court deems just and proper.

## DAMAGES

141. Plaintiffs seek compensatory damages for all injuries suffered by ZANE BONNETT and his parents, including physical pain, emotional distress, psychological regression, loss of educational opportunity, and disruption of family stability.

142. These damages include, without limitation:

a. Compensatory damages for physical pain, emotional distress, psychological regression, and loss of educational opportunity;

b. Economic damages, including medical expenses, counseling and therapeutic treatment costs, and educational remediation expenses;

c. Non-economic damages, including mental anguish, humiliation, fear, anxiety, and loss of enjoyment of life;

d. Educational damages, including loss of instructional time, regression in academic progress, and costs associated with tutoring, replacement schooling, and academic supports;

e. Damages for loss of liberty, including harm arising from ZANE BONNETT's unlawful seizure, restraint, arrest, and overnight detention;

f. Punitive damages against individual defendants under 42 U.S.C. § 1983 for reckless or callous disregard of ZANE BONNETT's constitutional rights;

g. Attorneys' fees and costs under 42 U.S.C. § 1988;

h. Injunctive relief, including training requirements, corrective measures, and implementation of disability-related accommodations;

i. Pre- and post-judgment interest as allowed by law;

j. All other legal, equitable, or declaratory relief that the Court deems just and proper.

## PRAYER FOR RELIEF

143. **WHEREFORE,** for the foregoing reasons and pursuant to the Counts above, Plaintiff ZANE BONNETT, by and through next friends WILLIAM BONNETT and ELIZABETH BONNETT, demand judgment against Defendants FRISCO INDEPENDENT SCHOOL DISTRICT and CITY OF FRISCO, and, where applicable, their employees acting in their official and individual capacities, alleging as follows, and in the alternative, for general, compensatory, and punitive damages; emotional-distress damages; medical, counseling, and educational-remediation expenses; reasonable attorneys' fees and costs of suit with interest pursuant to 42 U.S.C. § 1988; injunctive relief; and any further relief which the Court may deem equitable and just.

## JURY DEMAND

144. Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## CERTIFICATION

145. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further

investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,

**LLG NATIONAL LAW GROUP**

Dated: September 14, 2026

*/s/ Renee Walker*
Renee Walker
Texas State Bar No.
16958480
Phoenix Corporate Tower
3003 N Central Avenue - Suite 685
Phoenix, AZ 85012
Phone: 888-363-0011
Fax: 707.215.3600
attorney@llgnational.com
*Attorney for Plaintiff*

| School Year | Event | Notes |
|---|---|---|
| **Freshman year 2022-23**<br>**Principal: Mr. Duce**<br>**SPED coach: Ms. Gradney**<br>**During the entire school year Zane is under the care of his psychiatrist, Dr. Bruty and his behavior therapist, Rusty Lozano** | August 2022 - met with Gradney before school started about Zane's emotional disturbance and tendency to elope when upset and his label as SPED and how to support Zane in high school | Emails missing from FERPA request |
| | Aug 2022 - mom emails all of Zane's teachers before school begins to introduce Zane in advance and to present his issues | Emails missing from FERPA request |
| | August 2022 - mom provides Gradney with all of his SPED and 504 documentation from his last time in public school | SPED for emotional disturbance and ADHD |
| | 9/14/22 - first documentation of Zane **eloping** from Learning Lab | In **FIE doc**<br>Khan / Aguirre (LL teacher) states that she called an AP |
| | 9/26/2022 - Zane switches to on level Biology class with Seaman | That same day mom sends **email** to seaman detailing his issues and accommodations<br>Emails missing from FERPA request but LB has them |
| | 9/27/22 - Zane is failing or close to failing 4 out of 8 classes, send an email to Dr. Bruty for recommendations | Dr recommends adds Intuniv to his medication regime |
| | 9/28/22 - **email** Seaman for classes resources for Zane b/c canvas links aren't | Zane's stress is increasing because he can't access the coursework |

| School Year | Event | Notes |
|---|---|---|
| | working, counselor and AP Radford are copied<br><br>Email meeting request with AP Francis (AP over science courses) and Seaman, meeting set for Friday morning (9/30/22) | |
| | 9/30/22 - meeting with AP Francis to discuss lack of resources for Zane in Biology and his increasing frustration, mom tells Francis that Zane is “a ticking timebomb” because he is so frustrated with not knowing what to study for Biology tests and not being able to access anything | By 1pm Zane has an outburst in English class which leads to **elopement** and ISS for the rest of the day and on 10/3/22 **School has no record of this ISS, email of the ISS in emails folder** |
| | 10/3/22 - moms **emails** Gradney to request an emergency ARD | Zane serves another day of ISS for his outburst on 9/30<br>Mom meets with Duce to discuss the 9/30 outburst, tells him that she did everything possible to warn AP Francis that he was extremely escalated including meeting with her that morning and telling her that Zane is a “ticking time bomb”<br><br>**ISS referral** - missing from FERPA request but LB has it |
| | 10/4/22 - Gradney responds that we don’t have to have emergency ARD, rather we can just do amendments to his existing accommodations | Gradney convinces mom, via **email**, to do amendments because it would take a week or so to schedule an emergency ARD. Mom responds that she’ll work on a list of amendments |

| School Year | Event | Notes |
|---|---|---|
| | 10/14/22 - list of amendments are finalized via email | |
| | 10/28/22 - School psychologist completes Zane's **FIE (started on 9/14/22)** | Gist - ARD committee has determined that additional formal psychological testing is needed, he is disabled but not emotionally disturbed, no known testing done for autism<br>No evidence of additional formal psych testing done |
| | Dec 2022 - school recommends dismissing Zane from SPED and refers Zane to be evaluated for 504 | Parents feel pressure to agree<br>Seems like there is a mtg missing b/w 10/28/22 and 12/22/22<br>**email** |
| | 3/22/22 - initial 504 meeting for Zane | Zane is approved for 504 accommodations for dyslexia, dysgraphia and ADHD, **504 docs** |
| **Sophomore Year 2023-24**<br>**Principal: Ms. Addo**<br>**SPED coach: Ms. Gradney**<br>**During the fall semester Zane is under the care of his psychiatrist, Dr. Bruty and Dr. Shipe. During the 2nd semester Zane is under the care of Dr. Erwin.** | 8/21/23 - Zane has high anxiety about low marks in advanced Geometry. Dad sends email to teacher asking for resources that should have been posted to canvas, but aren't. Dad asks for a copy of notes to be given at the start of class per Zane's 504 accommodations. | Teacher responds that he will do his best to provide a copy of notes at the start of class and to make sure resources are posted to canvas.<br><br>**email** |
| | 9/11/23 - Dad emails geometry teacher again saying that resources Zane needs to study for retest are not posted to canvas and he requests the resources. | Teacher responds to send him in for tutoring where resources will be provided.<br><br>**email** |

| School Year | Event | Notes |
|---|---|---|
| | 9/12/23 - parents notice that copy of notes from Geometry teacher are illegible. | Zane says teacher said he can't figure out what's wrong with the printer. |
| | 9/14/23 - another 504 meeting, initiated by parents, is held to revise accommodations. Zane is failing geometry. The team adds "electronic copies of note, homework, classwork, and lessons to be provided to student for math" to the list of accommodations. | Geometry teacher reports that Zane is **shutting down** in class and has **high anxiety** during class. Mr, Rankin, french teacher, is in attendance.<br><br>**Where is 504 doc?** |
| | 9/15/23 - email from Geo teacher that Zane is **shutting down** in class today and **needs a cool down** period | In emails folder |
| | 9/27/23 - parents switch Zane to a new psychiatrist, Dr. Shipe | |
| | 10/23/23 - Geo teacher reports to mom that Zane is **shutting down** in class again | In emails folder |
| | 11/7/23 - argument over PC grade and rubric in French class last period of the day. | French teacher takes Zane into hallway to discuss. Rankin says Z **eloped**. Dismissal bell rings. Zane is dysregulated and goes to mom's classroom. French teacher follows Zane to mom's classroom and continues back and forth shouting match with Zane. |
| | 11/8/23 - Zane receives ISS for after school incident with French teacher on 11/7 | |

| School Year | Event | Notes |
|---|---|---|
| | 11/10/23 - Mom meets with Addo to discuss French incident | Addo repeatedly says teachers need to not engage with Zane when he is dysregulated, asks why mom couldn't "make him" stop yelling, **suggests BIP and re-eval for SPED and puts it on mom to move that forward** and tells mom to send email to all of his teachers saying that Zane is highly stressed this week and next because he is behind in classes after missing a few days of school and a few tests.<br><br>Addo repeats the refrain: Zane is non-compliant when escalated.<br>**Whole meeting is Audio Recorded.** |
| | 11/15/23 ? - Mom and Zane meet with PA at Dr. Shipe's | Zane is referred to Cortica Care for autism evaluation. |
| | Jan 2024 - Zane switches to on level Geometry with Mr. Moylan | |
| | 1/17/24 - parents initiate another 504 mtg to discuss accommodations | |
| | **1/10/24** - Z **elopes** from Comp Sci | 1/31/24 - mom views footage of Z eloping on 1/10, is told that 26 minutes out of class equates to an absence because he did not go to his cool down room (nurse's office). Zane says he didn't go in because people were there and he didn't want them to see him. |

| School Year | Event | Notes |
|---|---|---|
| | 2/7/24 - 504 meeting occurs, **have doc** | Accommodations revised |
| | 2/13/24 - 504 coord meets with Z's teachers to explain his accommodations | |
| | 2/21/24 - No canvas Geometry course is published no recent grades so Dad emails Moylan to ask about Zane's progress so there is no surprise failure since Zane needs to get at least a 75 to pass the year | Proactively trying to avoid math stress for Zane |
| | 3/1/24 - Zane argues with CS teacher about a problem on a test. Bonciu calls AP to the classroom, ignoring discipline flowchart. Once AP arrives, Zane refuses to leave the classroom, says "this is bs" and then meets with AP Ford | Ford assigns "Smart ISS" to Zane on ⅗ for saying "BS" |
| | 3/3/24 - dad **emails** Ford concerned about repeated office referrals for minor infractions rather than teacher handling the situation. **Alerts Ford that Z is being evaluated for autism**, mentions 2/7/24 meeting that Ford was supposed to have with teachers about Z's accommodations | 3/5/24 - Ford forwards dad's email to Addo - somewhere b/w 3/3 and 3 / 5 Ford must have talked to Addo about the situation<br>In emails folder |
| | 3/5/24 - parents keep Zane home from school so they can first meet with AP Ford | 3/6/24 - Dad meets with Ford to discuss what he believes are overly punitive |

| School Year | Event | Notes |
|---|---|---|
| | about ISS before it is served | consequences |
| | 3/7/24 - Zane is back at school and serves ½ day of ISS | |
| | 3/8/24 - Zane serves another ½ day of ISS | |
| | 3/8/24 - Dad meets with AP Ford to question why Bonciu did not follow teacher behavior intervention flowchart on Mar 4, tells Ford punishment is overly punitive when Zane did not say “bs” until after AP arrived at room which should not have happened in the first place | AP Ford sends meeting notes, says Zane is not cooperative when staff is trying to de-escalate him - a refrain Addo also uses. How can an escalated student be compliant while escalated? |
| | April 2024 - Dr. Erwin diagnoses Zane with autism level 1 with PDA | Diagnosis letter in Docs From Autism Doctor folder |
| **Junior Year 2024-25**<br>**Principal: Ms. Addo**<br>**SPED coach: Ms. Gradney**<br>**During the entire year Zane is under the care of Dr. Erwin at CorticaCare. From Sept to May he’s receiving intensive ABA therapy (6 hours a week) from CorticaCare therapists.** | 8/19/24 - **email** from Clayton about Zane becoming agitated in class and leaving to go to a study room | Mom **responds** within 23 minutes to inform teacher that he is autistic and what he saw in class was Zane trying to calm himself and to let teacher know that Zane is working with a therapist to find good ways to calm himself. |
| | 8/21/24 around 12pm - Dad receives phone call from AP Volk that Zane has **eloped** to Collin College field and to come get him | Dad picks up Zane who is being watched by 2 police officers, takes him to parking lot of LTHS, where mom comes out to talk to him. Zane is completely inconsolable and parents determine he needs to go home for the rest of the day. |

| School Year | Event | Notes |
|---|---|---|
| | 8/21/24 2:30pm - Dad sends **email** to CTE counselor and Clayton requesting a meeting to discuss Zane's progress in class | Refer to CTE Timeline Doc and Refer to emails in CTE Assault docs folder |
| | 8/21/24 4:30pm - mom emails Zane's updated diagnosis to 504 coordinator Michell | Where is email |
| | 8/21/24 4:53pm - AP Volk phones dad to let him know there's a video of a teacher "putting hands on Zane" | In actuality, the video is **7 minutes** long of the teacher chasing Z down a hallway, wrestling him to the ground when Z gets to the vestibule and dragging him across the floor.<br>Clayton never returns as Zane's teacher |
| | 8/22/24 - Dad **emails** AP Volk to request a viewing of the video. | Refer to emails **in CTE Assault docs folder** |
| | 8/22/24 12:45pm - mom and dad view video | Parents are horrified by what they see the teacher doing to Zane.<br>**2 Audio Recorded Meetings in audio recordings folder** |
| | 8/23/24 - mom sends **email** to AP Volk to **preserve** the entire video of teacher attacking Zane | Refer to emails **in CTE Assault docs folder** |
| | 8/23/24 - Volk (CTE AP) comes to LT to interview Zane without parent permissions | Mom intervenes and says Zane has nothing to say without legal representation, **brief meeting recorded in audio recordings folder** |

| School Year | Event | Notes |
| --- | --- | --- |
| | b/w 8/22 and 8/26 - AP Volk obtains written statement from Zane about the incident without parents present and without their authorization | During this window CTE APs are investigating the incident, including questioning classmates to see if Zane said anything inflammatory before he left the classroom. Not a single classmate noticed anything unusual, as Volk stated in recording<br>Where are the docs of the investigation? Where is Zane's written statement? Not in FERPA request |
| | 8/27/24 - meeting at CTE with counselor and Volk | recorded? |
| | 8/28/24 - dad **emails** AP Volk stating that Clayton must be removed as Zane's teacher and there must not be any possibility of Zane crossing paths with this teacher ever again | Many emails back and forth about the teacher, the assault by the teacher, and viewing of the video and all of these emails are missing from the FERPA request but they are **in CTE Assault docs folder** |
| | 8/29/25 - parents view video of the assault again, this time from start to finish, from the moment Z leaves the classroom through the time of the assault in vestibule, AP Volk states Clayton is no longer the "teacher of record" for Zane's class, Volk says he doesn't know why police report wasn't filed, Volk says CPS report was filed | Meeting recorded **in audio recordings folder** |

| School Year | Event | Notes |
|---|---|---|
| | 9/12/24 - CTE **emails** all saying that Animation II class has a new teacher | CTE also emailed parents on 9/3 about teacher resignation<br>**In emails/2024-25 folder** |
| | 9/17/24 - 504 meeting at LTHS | Dad and LT recorded?<br><br>504 doc updated with autism diagnosis but not PDA, no discussion of evaluating Zane for SPED |
| **Senior Year 2025-26**<br>**Principal: Ms. Addo**<br>**SPED coach: Ms. Gradney**<br>**During the entire year Zane is under the care of Dr. Erwin at CorticaCare.** | 9/10/25 6pm - Ford emails parents that Zane is not authorized to use his iPad in class and that she has notified all teachers that he is not to use his iPad in class | Ford timed email to send at 6pm - why? Apparently, Ford lied about notifying teachers that Z cannot use his device in class. PreCal teacher tells mom that she was not notified of any such thing. Other teacher (Drewniak) present as witness. |
| | 9/10/25 6:45pm - Dad responds to Ford email saying that use of iPad is in his 504 plan and not allowing him to use it would violate his civil rights, dad says Schwind (504 coord.) is aware of his iPad accommodation | |
| | 9/11/25 9:23am - Ford responds that he was using a personal laptop not an iPad and that regardless he still can't use iPad b/c review is pending | |
| | 9/11/25 10:03am - Dad responds to Ford that Zane does not own a personal laptop | |

| School Year | Event | Notes |
|---|---|---|
| | 9/11/25 11:15am - Dad emails Ford again and copies Schwind to say that use of iPad is already in his 504 and so teachers must follow that and to prevent Zane from using his iPad would be a major disruption to his studies | Ford never replies |
| | 9/11/25 - Zane is escalated and wearing his sunglasses. Addo (principal) attempts to stop him in the hallway for dress code violation. Zane ignores her. Addo grabs him by the arm. Zane swings his arm to release Addo's grip. In the process he inadvertently hits another student. | Addo does not document in referral that she grabbed Zane's arm (restraint). Parents only find out about the restraint used on 9/11 after Zane's arrest when Addo tells mom about her restraint of Zane on 9/11 |
| | 9/11/25 around 10:45am - Zane is called to AP office. Zane thinks they're going to take his iPad away. Zane leaves campus in his car and goes home. | Addo calls dad. Dad and Addo discuss Zane's autism and why he was escalated for fear of losing his iPad. Punishment is reduced to one detention from the original 3. |
| | 9/19/25 - 504 meeting to discuss Zane's use of iPad, iPad use is once again approved | recorded |
| | 10/29/25 - Zane goes to learning lab around 2:45pm to retake precal test, panic attack, elopement and subsequent arrest. Precal teacher is informed of elopement. Precal teacher calls mom who has a class at the time. Mom states she doesn't know where Z is. **Video** exists and is preserved from the start of | School says bodycam requires subpoena to Frisco PD.<br>Admins fail to identify Zane and therefore do not implement his 504 accommodations (do not talk to him when escalated). We suspect an email or phone call was done around 3:45pm to alert admins of Zane's elopement and so they |

| School Year | Event | Notes |
| --- | --- | --- |
| | escalation at the learning lab all the way to the arrest. **Witness statements** support that others were alerted at the beginning of Zane's distress and that SRO did not identify himself to Zane (no mention of identification in Gradney's statement, is it on bodycam?). | should have known who he is via email, texts, or walkie talkie.<br>Zane is trying to calm himself for **45 minutes** while he is alone in the stairwell.<br>Z does not make any apparent threats until after Montague and SRO arrive and continually prod him and SRO touches his shoulder.<br>Z does not know who is talking to him because he has taken his hoodie off and has been covering his face with his hoodie the entire time.<br>Zane stands up and turns to go find a quiet place. SRO apparently tells Z he is being detained. Z does not understand what this means. SRO pulls Z down the stairs when he continues to walk away.<br>504 doc says that Z lunged at SRO and pushed him against the wall - per the video Z was falling down the stairs as SRO grabbed him and SRO was clearly not pushed up against a wall.<br>incorrect date of arrest on 504 plan<br>Then SRO does an **illegal prone restraint** on Zane with his knee in Zane's back. Zane's wrist is sprained in the process and he receives a few bruises and abrasions. Zane is handcuffed.<br>Only after all of this is mom alerted as to Zane's whereabouts and that he is being arrested.<br>Mom hurries to find Zane, asks Z what |

| School Year | Event | Notes |
|---|---|---|
| | | happened. Z describes a textbook panic attack. Mom turns to all APs that have assembled, specifically Addo and Montague, and asks if anyone told the SRO that Z is autistic - no response. SRO has been on the job 3 weeks - not properly trained to be a SRO? Not educated on Zane's accommodations. Zane spends the night at municipal jail.<br><br>**Parents were never notified of the restraint the SRO used on Zane. (against the law)** |
| | 10/31 - Precal teacher documents that Z has **eloped** twice so far this year | On 9/11 and ?? |
| | 11/3 - threat assessment conducted with Montague (who is also listed as a victim on arrest documents), Dr. Austin (lead counselor at LTHS), possible that SRO was in attendance as well | Determined "not an imminent threat"<br>**Audio recorded** |
| | 11/4 - Due Process meeting conducted by Montague (who is also listed as a victim on arrest documents) | Result: recommend send to DAEP for 45 days, pending MDR outcome<br>**Audio recorded** |
| | 11/10 - MDR | Result: Zane's behavior was a manifestation on his disability<br>Documents state that 504 accommodations were followed, but audio recording shows there was disagreement among meeting members (parents and |

| School Year | Event | Notes |
|---|---|---|
| | | advocate vs. admins), witness statement (learning lab teacher) states accommodations were not provided (no paper test)<br>**video/audio recorded** |
| | 11/11 - notification from Dir. of student services that Zane will be transferred to Independence High | |
| | 11/13 - meeting at Independence with AP and 504 coord to discuss class schedule | |
| | 11/14 - Zane's first day at Independence | |
| | 11/17 - Bond hearing | Montague and district lawyer present. For the 1st time Montague states he was scared during the incident.<br>Judge rules bond conditions stand. |
| | ~12/17 - receive docs from FERPA request | In the docs there's a page that reads:<br>Due to software changes out of Frisco ISD's control,<br>email search mechanisms including search<br>conditions, narrowing, attachment-imaging, and deduplication<br>are either limited or no longer available.<br>Frisco ISD has provided responsive results to the best<br>of our ability; however, we cannot guarantee the |

| School Year | Event | Notes |
| --- | --- | --- |
| | | specificity or inclusiveness of the search results. |
| | 12/31 - resisting arrest charge filed | Court date set for 1/29/26 |